**FDL TECHNOLOGIES, INC., and Dale C. Nathan, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 90–3948C.

United States Claims Court.

July 28, 1992.

February 20, 1992 opinion, *White Mountain Apache Tribe*, 25 Cl.Ct. at 342.

Dale C. Nathan, Eagan, Minn., for plaintiffs.

Robert E. Kirschman, Jr., Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Major David Carey, Army Litigation Center, of counsel.

## ORDER

NETTESHEIM, Judge.

### FACTS

On September 3, 1991, plaintiffs FDL Technologies, Inc. ("FDL"), and Dale C. Nathan ("Nathan") filed an application for attorneys' fees and litigation costs pursuant to the Equal Access to Justice Act (the "EAJA"), 28 U.S.C. § 2412(d) (1988). Defendant requests that the court deny the application, contending: Plaintiffs are not a prevailing party; defendant was substantially justified in its litigation position; and plaintiffs failed to conform to RUSCC 81(e)(1), which requires that a plaintiff, in

accordance with section 2412(d)(1)(B), submit an application showing that the plaintiff is a prevailing party and allege that defendant's position was not substantially justified.

Plaintiffs' claim is for $5,935.28. As proof of its "prevailing party" status, plaintiff FDL attached to the EAJA application this court's dismissal of a complaint filed by plaintiffs on November 15, 1990. Dismissal followed the Government's payment to plaintiff FDL of the amount requested in the complaint. With respect to the required allegation that defendant's position was not substantially justified, plaintiff FDL noted on the EAJA application, dated August 8, 1991, the following:

> The principal relief sought by plaintiff FDL Technologies, Inc., was payment of $26,739.51 agreed upon by the agency as the amount due for attorney's fees and litigation costs under an Army contract in connection with a proceeding before the ASBCA. After an extended period and shortly before a hearing on plaintiffs' motion for summary judgment the agency paid the full amount claimed.

## DISCUSSION

 The United States Court of Appeals for the Federal Circuit has ruled that plaintiff Nathan is not a prevailing party. *FDL Technologies, Inc. v. United States,* 967 F.2d 1578 (Fed.Cir.1992). If the Government's payment to plaintiff FDL was precipitated by the filing of plaintiffs' complaint in the Claims Court, FDL would be considered a prevailing party. "A court should look to the substance of the litigation to determine whether an applicant has *substantially* prevailed in its position, and not merely the technical disposition of the case or motion...." *Devine v. Sutermeister,* 733 F.2d 892, 898 (Fed.Cir.1984) (emphasis in original). By the same token, however, "[a] party need not have litigated to final judgment and have been awarded the ultimate relief requested in order to be entitled to an award of fees under the EAJA...." *Austin v. Dep't of Commerce,* 742 F.2d 1417, 1420 (Fed.Cir.1984). "[A] party may be considered to have pre-

vailed even when the legal action stops short of final appellate, or even initial, judgment due to a settlement or intervening mootness...." *Grano v. Barry,* 783 F.2d 1104, 1108 (D.C.Cir.1986).

> If the defendant, under the pressure of the lawsuit, pays over a money claim before the judicial judgment is pronounced, the plaintiff has "prevailed" in his suit, because he has obtained the substance of what he sought. Likewise in a declaratory judgment action: if the defendant, under pressure of the lawsuit, alters his conduct (or threatened conduct) towards the plaintiff that was the basis for the suit, the plaintiff will have prevailed....

*Hewitt v. Helms,* 482 U.S. 755, 761, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987). In the present case, the facts do not support a determination that plaintiffs' filing of a complaint caused the Government to alter its conduct. Consequently, plaintiff FDL is not a prevailing party.

On May 14, 1990, the Armed Services Board of Contract Appeals (the "ASBCA") sustained FDL's appeal of the termination of Contract No. DAAA09–84–C–0936 for default by the Defense Contract Management Area Operations (the "DCMAO"), St. Paul, Minnesota. By application dated April 21, 1990, FDL had submitted a claim to the ASBCA for attorneys' fees and costs pursuant to the EAJA. FDL submitted a revised application in the amount of $26,731.59 by letter dated June 9, 1990. The ASBCA allowed the Government until July 26, 1990, to contest any portion of the application. The Government did not contest any portion of the application, the matter was handled as a settlement, and on September 28, 1990, the DCMAO issued a contract modification to Contract No. DAAA09–84–C–0936, increasing the contract in the amount of $26,731.59 for legal fees pursuant to the EAJA. On October 20, 1990, Mr. Nathan sent an invoice to the Government, requesting immediate payment of the $26,731.59 amount. In a November 8, 1990 letter, the Government responded that it was considering whether or not to apply offsets against this amount. Plaintiffs FDL and Nathan filed a com-

plaint in this court on November 15, 1990, seeking judgment against the Government in the amount of $26,731.59.

The Government issued a check for $26,731.59 to FDL on December 14, 1990. According to Melanie Giles, Chief, Accounting and Disbursing Branch, Defense Finance and Accounting Service ("DFAS"), the check was issued in response to the October 20, 1990 invoice. Affidavit of Melanie Giles, dated June 26, 1991, ¶ 1. On January 22, 1991, Albert E. Baddin, trustee in bankruptcy for FDL, sent a letter to the Defense Logistics Agency, of which DFAS is a part, stating that he had not received the December 14, 1990 check. DFAS initiated stop payment procedures on the check in February 1991 by its submittal of an "SF [Standard Form] 1184" to the Department of Treasury ("Treasury"). An SF 1184 notifies Treasury of the nonreceipt of a check. Upon receipt of that form, Treasury determines whether the subject check has been cashed and then sends a Daily Advice of Status to DFAS, typically within eight weeks of receipt of the SF 1184, indicating whether or not the check has been cashed. If the check has not been cashed, the agency that issued the check is credited with the amount of the check.

On April 16, 1991, DFAS submitted a second SF 1184 to Treasury since it had not received a response to the February submittal and since Mr. Baddin continued to inquire as to when a replacement check would be issued for the December 14, 1990 check. On April 28, 1991, DFAS received notification, through a Daily Advice of Status from Treasury, that the check had not been cashed. On June 4, 1991, DFAS received an "SF 1081" which indicated that it had been credited for the amount of the check. DFAS could not issue a replacement check without receipt of an SF 1081 showing that it had been so credited. The replacement check was issued and mailed to FDL on June 5, 1991. Because Mr. Baddin's office had stopped accepting mail for FDL, the replacement check was returned to DFAS. The replacement check was mailed out a second time, this time in an envelope addressed to Mr. Baddin, and

was received by Mr. Baddin on June 19, 1991.

There is no indication that the actions of DFAS and Treasury were spurred on by the filing of plaintiffs' complaint in the Claims Court. The Government issued a contract modification on September 28, 1990, increasing the subject contract in the amount of $26,731.59 for legal fees pursuant to the EAJA. On October 20, 1990, Mr. Nathan sent an invoice to the Government, requesting immediate payment of the $26,731.59 amount. Plaintiffs FDL and Nathan filed a complaint in this court on November 15, 1990, seeking judgment against the Government in the amount of $26,731.59. The Government, in response to the October 20, 1990 invoice, issued a check to FDL on December 14, 1990. There is no indication that the issuance of the check on December 14, 1990, was precipitated by the filing of the complaint. Nor is there any intimation in the record that the subsequent actions to issue a replacement check were in any way hastened by the filing of the complaint. Rather, DFAS and Treasury proceeded in a routine manner in determining whether the check had been cashed and in issuing a replacement check.

On June 11, 1991, this court ordered defendant to detail the procedures for and its efforts in respect of securing a replacement check. This defendant did by a filing of July 1, 1991. The replacement check was issued on June 5, 1991. It does not appear that the court's order precipitated defendant's actions. Because the filing of a complaint in the Claims Court by plaintiff FDL did not in any way hasten plaintiffs' receipt of the money prayed for in the complaint, plaintiff FDL is not a prevailing party and, consequently, is not entitled under the EAJA to attorneys' fees and litigation costs arising from the filing of plaintiffs' complaint in this court.

 Assuming, *arguendo*, that plaintiff FDL is a prevailing party, the next issue to be reached is whether defendant's litigation position was substantially justified. The purpose of the EAJA is to lift the "bar of sovereign immunity for award of fees in suits brought by litigants quali-

fying under the statute." *Levernier Constr., Inc. v. United States,* 947 F.2d 497, 502 (Fed.Cir.1991). As a waiver of sovereign immunity, the Act must be strictly construed, allowing for the award of fees "only to the extent explicitly and unequivocally provided." *Id.* (quoting *Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1386 (Fed.Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983)).

■ The EAJA provides that a prevailing party shall recover fees and other expenses incurred by that party in any civil action against the United States "unless the court finds that the position of the United States was substantially justified...." 28 U.S.C. § 2412(d)(1)(A). "Substantially justified" does not mean " 'justified to a higher degree,' but rather 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). The standard equates to a " 'reasonable basis both in law and fact.' " *Id.; Beta Sys. Inc. v. United States,* 866 F.2d 1404, 1406 (Fed.Cir.1989); *Chiu v. United States,* 948 F.2d 711, 715 (Fed.Cir.1991). Moreover, the litigation position to be evaluated includes the record of the agency's action or failure to act that preceded the litigation. *Gavette v. OPM,* 808 F.2d 1456, 1467 (Fed.Cir.1986).

■ The court finds that defendant's litigation position was reasonable and, therefore, substantially justified for three reasons. First, the DCMAO's actions were not dilatory. The period of time between the settlement and the issuance of a check, July 26, 1990, to December 14, 1990, was not unreasonable, given that the agency had a right to consider offsets. Nor were DFAS' or Treasury's procedures protracted. Second, the only litigation actions that took place before issuance of the replace-ment check, once the complaint, answer, and joint preliminary status report had been filed, were the filing and briefing on plaintiffs' motion for partial summary judgment and defendant's opposition thereto and motion to dismiss for lack of subject matter jurisdiction. Defendant contended that plaintiffs' recourse was exclusively under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988) (the "CDA"), because plaintiffs were suing on the basis of a modification to a contract that restricted their avenues of relief to the CDA. Although this argument was rejected,* *see* Order entered on June 11, 1991, the court advised plaintiffs, who stated that they were pursuing a claim for attorneys' fees under the EAJA, that defendant's litigation position would be considered to be substantially justified because the case was one of first impression. *See* Order entered on July 8, 1991, at 2 (citing *Devine,* 733 F.2d at 898; *Alaskan Arctic Gas Pipeline Co. v. United States,* 19 Cl.Ct. 211, 219 (1990); *Change–All Souls Hous. Corp. v. United States,* 1 Cl.Ct. 302, 304 (1982)).

Third, defendant filed an answer to plaintiffs' complaint on February 12, 1991, admitting that plaintiffs were entitled to the $26,739.51 amount and asserting that the Government made payment to plaintiff FDL's trustee in bankruptcy on approximately December 14, 1990. Subsequently, defendant, in its May 6, 1991 response to plaintiffs' motion for partial summary judgment, noted that the December 14, 1990 check had not been returned to the Government or presented for payment and that defendant was endeavoring to resolve the matter. The court views defendant's litigation position as having a reasonable basis both in law and fact and, thus, as substantially justified, since defendant did not contest plaintiffs' entitlement to the amount sought in plaintiffs' complaint and since defendant worked to resolve the mat-

---

* The court did not deny the motion, but deferred ruling until defendant submitted information necessary for its resolution.

ter by following the standard procedures for issuing a replacement check. Consequently, even assuming, *arguendo,* that plaintiff FDL is a prevailing party, it is not entitled to attorneys' fees and litigation costs under the EAJA.

## CONCLUSION

Based on the foregoing, plaintiffs' application under the EAJA is denied.

IT IS SO ORDERED.