James C. GUTZ and Arlene Gutz,
Husband and Wife,
Plaintiffs,

v.

UNITED STATES Defendant.

No. 98–785L.

United States Court of Federal Claims.

Nov. 23, 1999.

W. Craig Howell, Domina Law P.C., Omaha, Nebraska, attorney of record, for the plaintiffs.

Thomas L. Halkowski and James A. Devita, General Litigation Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., attorneys of record, for the defendant.

## OPINION

HORN, Judge.

The above captioned case is presently before this court on cross motions for summary judgment. In 1993, plaintiffs James C. Gutz and Arlene Gutz filed suit in the United States District Court for the District of Nebraska challenging administrative determinations of the Soil Conservation Service (SCS). In 1994, the parties entered into a settlement agreement to resolve the dispute and the case was dismissed. The plaintiffs now claim that the government breached the agreement by failing to pay $17,471.00 due under the agreement. Plaintiffs also claim that the government was late in paying $11,865.00 due under the settlement agreement and that they are owed interest on that amount. Finally, the plaintiffs claim attorneys fees.

The government contends that the plaintiffs have misinterpreted the settlement agreement and that it has already paid the full amount due. The defendant seeks to offer evidence of the parties' communications during negotiations and drafts of the settlement agreement in support of its interpretation. In addition, the defendant argues that the plaintiffs are not entitled to interest or attorneys fees because there is no legal authority supporting their claims.

The parties have submitted a joint statement of facts and agree that the issues before the court are whether the United States has complied with the 1994 settlement agreement and whether plaintiffs are entitled to additional amounts of compensation. After reviewing the evidence and briefs submitted by the parties, the court finds that the defendant did breach the settlement agreement and that plaintiffs are entitled to additional compensation as discussed below.

## FACTS

The plaintiffs are husband and wife and own Farm No.1993, Tract 1289, in Pierce County, Nebraska. On March 12, 1993, plaintiffs filed suit in the United States District Court for the District of Nebraska challenging an administrative determination of the SCS which had found that plaintiffs were ineligible for federal commodity price support in the years 1989 and 1990 due to violations of the wetland conservation provisions of the Food Security Act of 1985, 16 U.S.C.

§ 3801, *et seq.* (1994 and 1997 Supp. III).[1] The government, however, had already paid plaintiffs the 1989 benefits. As a result of the SCS determination, the government withheld, as a set-off, plaintiffs' 1993 feed grain advance deficiency payment of $17,471.00 and plaintiffs' 1994 payment of $11,865.00.[2]

On June 26, 1994, the parties entered into a settlement agreement to resolve the dispute, which the United States District Court approved in its order dismissing the matter.

On pages 4-6 of the settlement agreement the following language appears:

3. Upon entry of the Order of the Court as provided for in paragraph 9 of this Settlement Agreement and in reliance on the agreements made herein, the USDA [United States Department of Agriculture] and its agencies, including the CCC [Commodity Credit Corporation], shall (a) withdraw all claims against Gutz related to the activities that are the subject of this action, including any claims of set-off related thereto for repayment of payments previously made by ASCS [Pierce County Agricultural Stabilization and Conservation Service] to Gutz for the 1989 and 1990 crop years, (b) refund to Gutz, without interest, any funds that have been held as set-offs for such claims, (c) pay to Gutz the sum of one hundred and four thousand dollars ($104,000.00); (d) withdraw previously made determinations that Gutz was out of compliance with the original Minimal Effect Agreement entered into between the Parties on December 29, 1989, and (e) withdraw previously made determinations that Gutz was ineligible for USDA farm program benefits for the years 1990, 1991, 1992, and 1993.

\* \* \*

6. It is understood and agreed that, except as expressly stated herein, this Settlement Agreement expresses full, complete and mutual settlement of liabilities claimed and denied, that there is absolutely no agreement or reservation not clearly expressed herein, and that this release and agreement is intended to avoid litigation and be final and complete. This Settlement Agreement represents the entire understanding of the Parties with respect to the matters herein contained, and may not be amended or modified except by a writing signed by all Parties.

On July 7, 1994, the defendant paid plaintiffs $104,000.00. On August 25, 1994, defendant paid plaintiffs $7,983.00 of the $11,865.00 in 1994 payments which had been held as a set-off. The government did not pay $3,882.00 of the $11,865.00 adjustment, taking the position that the advance payment for that year was too high, due to the fact that the actual price of corn exceeded the projected price used to compute the original payment. The decision did not affect other beneficiaries of the program who had already received payments until the government made a formal decision later in the year. At the plaintiffs' request, on November 25, 1994, the defendant paid plaintiffs $3,882.00, which comprised the balance of the 1994 benefits held as set-off. Then, on December 6, 1994, the government formally requested the return of the $3,882.00 sum. Plaintiffs returned the money to the government on March 15, 1995.

In November of 1996, plaintiffs filed a motion for enforcement of the terms of the settlement agreement in the United States District Court for the District of Nebraska. On April 2, 1997, the court stated that, as a discretionary matter, it would not rule on whether the terms of the agreement were violated, however, the District Court indicated that the plaintiffs could file a breach of contract action against the federal government. Subsequently, plaintiffs filed a complaint in this court on October 9, 1998.

Plaintiffs believe that subparagraph 3(b) of the settlement agreement refers to both of

---

1. Initially, the parties entered into a minimal effect agreement to resolve the alleged violations of the Wetland Conservation Act. It was the SCS's contention that plaintiffs had violated this agreement and, thus, also violated the Wetland Conservation Act.

2. Although the parties have not so stipulated, it appears in a letter from the plaintiffs' counsel to the Department of Agriculture, dated February 2, 1994, that the government also may have set-off payments in 1990, 1991, and 1992. The evidence in the record on this issue is limited.

the withholdings from 1993 and 1994 and is separate and distinct from the $104,000.00 mentioned in subparagraph 3(c). They also claim that because the government did not refund the 1994 benefits until August 25, 1994, two months after the settlement agreement was executed, they are entitled to interest. In addition, plaintiffs claim that the $3,882.00 was wrongfully withheld from July 8, 1994 to November 25, 1994 and that they are entitled to interest for that period of time. Finally, plaintiffs request attorneys fees. In sum, plaintiffs request $17,471.00 plus interest since July 8, 1994, interest on $7,983.00 from July 8, 1994 through August 25, 1994, interest on $3,882.00 from July 8, 1994 through November 25, 1994, and attorneys fees.

Defendant argues that while the set-off from 1994 ($11,865.00) was separate from the amount mentioned in subparagraph 3(c), the set-off from 1993 ($17,471.00) was not. In support of this interpretation, defendant attempts to offer evidence derived from communications between the parties during negotiation and drafting of the settlement agreement to show that the parties intended to include the 1993 set-off in subparagraph 3(c). In addition, defendant argues that it is not required to pay interest or attorneys fees in this situation and that the government already has met all of its obligations.

## DISCUSSION

Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar both in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

RCFC 56(c) provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Creppel v. United States*, 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1306 (Fed.Cir.1992); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991); *Rust Communications Group, Inc. v. United States*, 20 Cl.Ct. 392, 394 (1990). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury [trier of fact] could return a verdict for the nonmoving party." *Id.; see also Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd*, 937 F.2d 622, 1991 WL 93077 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. 2505. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the nonmoving party cannot present evidence to support its case under any scenario, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The initial burden on the party moving for summary judgment, to produce evidence showing the absence of a genuine issue of material fact, may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence which establishes the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548; *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. at 679.

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the nonmoving party will need to go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories and admissions. *Id.*

In the above captioned case, the parties agree that summary judgment is appropriate and have filed affidavits, documents and joint stipulations of fact. Moreover, no material issues of disputed fact have been identified by the parties or by the court. Therefore, this case is ripe for summary disposition.

■ An initial determination this court must make is whether to apply federal or state law. Plaintiffs suggest that, under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the court should apply Nebraska state law in interpreting this contract. However, this is contrary to the rule set down in *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), which stated that when the government acts out of authority founded in the United States Constitution and federal statutes, state law is inapplicable. *Id.* at 366–67, 63 S.Ct. 573; *see Montana v. United States,* 124 F.3d 1269, 1274 (Fed.Cir.1997); *see also Al–Kurdi v. United States,* 25 Cl.Ct. 599, 601 (1992) ("In the context of contracts between the federal government and its citizens, the courts have opted for a uniform federal common law of contracts as the federal rule of decision, to avoid the uncertainty of conflicting state laws. *Clearfield,* 318 U.S. at 367, 63 S.Ct. 573...."). Because the government's authority to grant and revoke the SCS benefits at issue, and the authority to enter into a settlement agreement resolving related issues, are grounded in federal statutes and regulations, federal law applies to the instant case.

■ The interpretation of a government contract is a matter of law. *See Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990 (Fed. Cir.1996); *Hol–Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 351 F.2d 972, 973 (1965). The language of the "contract must be given that meaning that would be derived from the contract by a reasonable intelligent person acquainted with the contemporaneous circumstances." *Hol–Gar Mfg. Corp. v. United States,* 351 F.2d at 975. Moreover, words are to be given their plain and ordinary meanings. *Thanet Corp. v. United States,* 219 Ct.Cl. 75, 591 F.2d 629, 633 (1979). In addition, a court must give reasonable meaning to all parts of the contract and not render portions of the contract meaningless. *See Fortec Constructors v. United States,* 760 F.2d 1288, 1292 (Fed.Cir. 1985) (citing *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1555 (Fed.Cir.

1983)); *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434 (Fed.Cir.1996), *reh'g denied*, No. 96–5004 (Fed. Cir. filed Mar. 13, 1996). To ascertain the intentions of the parties, the contract should be construed in its entirety "so as to harmonize and give meaning to all its provisions." *Thanet Corp. v. United States*, 591 F.2d at 633 (citing *ITT Arctic Servs., Inc. v. United States*, 207 Ct.Cl. 743, 524 F.2d 680, 684 (1975); *Northwest Marine Iron Works v. United States*, 203 Ct.Cl. 629, 493 F.2d 652, 657 (1974)).

When the terms of a contract are clear and unambiguous, there is no need to resort to extraneous circumstances, such as prior negotiations or custom of the trade for its interpretation. *See Sea–Land Serv., Inc. v. United States*, 213 Ct.Cl. 555, 553 F.2d 651, 658 (1977), *cert. denied*, 434 U.S. 1012, 98 S.Ct. 724, 54 L.Ed.2d 755 (1978). A written agreement is ambiguous when a plain reading of the contract could result in more than one reasonable interpretation. *See Metric Constr., Inc. v. NASA*, 169 F.3d 747, 751 (Fed.Cir.1999); *City of Tacoma Dept. of Pub. Utils. v. United States*, 31 F.3d 1130 (Fed.Cir.1994) (citing *Hills Materials Co. v. Rice*, 982 F.2d 514, 516 (Fed.Cir.1992)). However, "[c]ourts are loathe to find ambiguity where the terms of the contract can be brought into harmony by a plain meaning interpretation rather than conflict by a strained interpretation." *Huna Totem Corp. v. United States*, 35 Fed.Cl. 603, 611 (1996). In addition, it is not enough that the parties differ in their interpretation of the contract clause. *See Community Heating and Plumbing Co. v. Kelso*, 987 F.2d 1575, 1578 (Fed.Cir.1993). Nor may a court look to extrinsic evidence in determining whether a contract is ambiguous. *See McAbee Construction, Inc. v. United States*, 97 F.3d at 1435; *Tacoma Dep't of Pub. Utils. v. United States*, 31 F.3d at 1134 ("Outside evidence may not be brought in to create an ambiguity where the language is clear.").

However, because an ambiguous or uncertain writing sometimes can only be understood upon consideration of the surrounding circumstances, including prior negotiations, extrinsic evidence will be allowed to interpret ambiguous clauses in written agreements. *See Sylvania Elec. Prods., Inc. v. United States*, 458 F.2d at 1005. If a contract is deemed ambiguous, "[e]xpressions of the parties during negotiations for the contract are thus a frequent source for interpretation of its text." *Id.*

The function of the parol evidence rule (which is not a rule of evidence, but a rule of substantive law) is to prevent inconsistent contemporaneous or prior statements from changing the terms of an integrated agreement. *See id.* There is, however, a heavy burden to overcome when arguing that a contract is not fully integrated. Extrinsic evidence is not admissible to add to or modify a fully integrated contract. *See McAbee Constr., Inc., v. United States*, 97 F.3d at 1434. When the parties intend that their written agreement be the final, exclusive instrument of their compact, even a prior, consistent oral agreement is superseded. *See Sylvania Elec. Prods. v. United States*, 198 Ct.Cl. 106, 458 F.2d 994, 1006 (1972). If the agreement is partially integrated, parol evidence may be introduced only to add consistent additional terms. *See McAbee Constr., Inc. v. United States*, 97 F.3d at 1434. To determine whether a contract is fully integrated, courts may look to extrinsic evidence. *See id.*

In the instant case, there is only one reasonable interpretation of the disputed portions of the settlement agreement, pages 4-5, subparagraphs 3(b) and 3(c). Subparagraph 3(b) clearly states that the government shall "refund to Gutz, without interest, any funds that have been held as set-offs...." Subparagraph 3(c) states "pay to Gutz the sum of one hundred and four thousand dollars ($ 104,000.00)...." The parties have stipulated that the 1993 funds in the amount of $17,471.00 were withheld as set-offs. From the plain meaning of the settlement agreement this court concludes, and without the need to resort to extrinsic evidence, it is clear that $17,471.00 is a sum that was withheld as a set-off and should be refunded to plaintiffs pursuant to subparagraph 3(b), and that the sum of $17,471.00 was not included

in the separate subparagraph 3(c) respecting the additional obligation to pay $104,000.00 to the plaintiffs.

The government's interpretation, that subparagraph 3(b) only includes the 1994 set-off for $11,865.00 and that the 1993 set-off for $17,471.00 is included in the $104,000.00 of paragraph 3(c), is not one which can reasonably be derived from the language of the settlement agreement. Subparagraph 3(b) makes no mention of referring only to set-offs for a particular year when it addresses a refund due for "any funds that have been held as set-offs." If the parties had wished to designate that subparagraph 3(b) was only applicable to the 1994 set-offs, they could have written it into the contract.

The agreement is clear and unambiguous. The $17,471.00 set-off in 1993 is included in subparagraph 3(b) and not in the separate subparagraph 3(c). The court need not resort to extrinsic evidence offered by defendant beyond the four corners of the agreement to show that the parties intended differently. Under the terms of the unambiguous agreement, the defendant has breached the agreement by failing to pay plaintiffs $17,471.00.

Plaintiffs request interest on three different amounts under 31 U.S.C. § 3901 *et seq.* (the Prompt Payment Act) and 41 U.S.C. § 611, *et seq.* (the Contract Disputes Act). First, they claim that the government owes them interest on the $17,471.00 discussed immediately above. Second, plaintiffs claim that the government owes them interest on $7,983.00 from July 8, 1994 through August 25, 1994, because the defendant was late in refunding the 1994 funds withheld as a set-off. Finally, plaintiffs request interest on $3,882.00 from July 8, 1994 to November 25, 1994 because when the defendant did reimburse plaintiffs for the 1994 funds withheld, it continued to withhold $3,882.00 as unearned advance deficiency payments, even though it had not yet requested other beneficiaries in the same program to return the unearned funds.

"Interest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress express-ly providing for payment thereof." 28 U.S.C. § 2516(a) (1994). Recognizing this requirement, plaintiffs try to rely upon the Prompt Payment Act, 31 U.S.C. § 3901, *et seq.*, to validate their request for interest. The statute states that, "the head of an agency acquiring property or service from a business concern, who does not pay the concern for each complete delivery item of property or service by the required payment date, shall pay an interest penalty to the concern on the amount of the payment due." 31 U.S.C. § 3902(a) (1994). In addition, "[i]n the case of a payment to which producers on a farm are entitled under the terms of an agreement entered into under the Agricultural Act of 1949, 7 U.S.C. § 1421 *et seq.*, an interest penalty shall be paid to the producers if the payment has not been made by the required payment or loan closing date." 31 U.S.C. § 3902(h)(2)(A). However, according to the Prompt Payment Act, "this chapter does not require an interest penalty on a payment that is not made because of a dispute between the head of an agency and a business concern over the amount of payment or compliance with the contract." 31 U.S.C. § 3907(c). In that situation, a claim for interest is subject to the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.* *See* 31 U.S.C. § 3907(c).

The settlement agreement between the plaintiffs and the government does not address the question of interest in the event of a breach of that agreement. The Prompt Payment Act does not apply to the plaintiffs' first claim for interest, the $17,471.00 set-off in 1993, because this amount was in dispute. *See* 31 U.S.C. § 3907(c); *CPT Corp. v. United States,* 25 Cl.Ct. 451 (1992) (stating that the Prompt Payment Act does not apply to amounts in dispute). Therefore, pursuant to the Prompt Payment Act, if the plaintiffs are to be awarded interest for this amount it must be under the Contract Disputes Act (CDA). However, the CDA does not apply to all government contracts. *See Coastal Corp. v. United States,* 713 F.2d 728, 730 (Fed.Cir.1983). Only contracts entered into by an executive agency for procurement of property (other than real property), services, construction, alteration,

repair, or maintenance of real property or the disposal of personal property are covered by the CDA. *See* 41 U.S.C. § 602 (1994)(a). In finding that a contract does not fall within the CDA, courts have focused on whether policy considerations relating to cost and competition apply to the contract, *see Institut Pasteur v. United States*, 814 F.2d 624, 627–28 (Fed.Cir.1987), whether there was a buyer-seller relationship or whether the transaction was donative in nature, *id.* at 628, whether the contracts were essentially grants designed to accomplish government social policy goals, *Busby School of Northern Cheyenne Tribe v. United States*, 8 Cl.Ct. 596, 600 (1985), and whether the contract was in the nature of a subsidy or guarantee, *Newport News Shipbuilding and Dry Dock Co. v. United States*, 7 Cl.Ct. 549, 552–54 (1985). All of these factors suggest that the settlement agreement, which resolved a dispute regarding a farm deficiency payment, is not covered under the CDA. Cost and competition factors do not apply to it. There is no buyer-seller relationship. The contract is designed to further government social policy goals. And the contract is in the nature of a subsidy. Therefore, it is not covered under the CDA. Moreover, because the head of an agency was not acquiring property or services from plaintiffs, section 3902(a)of the Prompt Payment Act also does not apply. *See FDL Techs., Inc. v. United States*, 967 F.2d 1578, 1581–82 (Fed.Cir.1992), *reh'g en banc denied,* No. 91–5141 (Fed. Cir. filed July 24, 1992) (finding that section (a) of the Prompt Payment Act does not apply unless the agency receives property or services). Plaintiffs are not entitled to recover interest on the $17,471.00 in dispute in the instant case in the absence of language in the settlement agreement expressly providing for payment of interest in the event of a breach.

■ As for plaintiffs' second claim of interest for $7,983.00 from July 8, 1994 (the date the settlement agreement was finalized) through August 25, 1994 (the date the government paid under the settlement agreement), it also is clear that section 3902(a) of the Prompt Payment Act does not apply. Plaintiffs' claim, therefore, must lie under section 3902(h)(2)(A), if it is to succeed. The issue under that section is whether the set-

tlement agreement was "entered into under the Agricultural Act of 1949." *Id.* The legislative history of the amendments to the Prompt Payment Act is somewhat helpful. The House Report states that the Act applies to agreements "authorized by the various agricultural support programs" managed by the CCC. H.R.Rep. No. 100–784, at 35–6 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3036, 3048. The terms of the settlement agreement release to the plaintiffs benefits provided to them under the Agricultural Act of 1949. *See* 7 U.S.C. § 1444b(a) (1994) (authorizing price support programs for corn). Thus, the Agricultural Act is the act which authorized the Department of Agriculture to pay funds to Mr. and Mrs. Gutz from the United States Treasury. Defendant argues that the settlement agreement was signed to resolve a legal dispute and, therefore, does not fall under the Agricultural Act. This interpretation places form over substance. While the settlement agreement does add another layer to the problem, it does not change the fact that, ultimately, the Agricultural Act authorized the payment to the plaintiffs. From July 8, 1994 on, the amount was not in dispute. Therefore, the Prompt Payment Act, not the CDA, applies. The government owes plaintiffs interest on the undisputed amount of $7,983.00 from July 8, 1994 through August 25, 1994.

In order to determine the amount of interest due to plaintiffs it is necessary to find what the "required payment or loan closing date" was to decide when the government should have paid plaintiffs. 31 U.S.C. § 3902(h)(2)(A) (1994). According to the Prompt Payment Act, the required payment date for an advance deficiency payment is thirty days after the date the Commodity Credit Corporation executes the contract. *See* 31 U.S.C. § 3902(h)(2)(B)(vii). Paragraph 3 of the settlement agreement states that, "[u]pon entry of the Order of the Court as provided for in paragraph 9 of this Settlement Agreement and in reliance on the agreement made herein, the USDA and its agencies, including the CCC, shall ... refund to Gutz, without interest, any funds that have been held as set-offs for such claims...." It is clear from this statement that the debt

(the set-offs for advance deficiency payments) became due and owing thirty days after the entry of the order of the District Court for the District of Nebraska on July 7, 1994. Therefore, interest on the $7,983.00 paid late to the plaintiffs should be calculated at the rate set by the Secretary of the Treasury beginning August 8, 1994 and ending August 25, 1994, the date the government finally paid.

■ The final category of interest requested by the plaintiffs is for $3,882.00 from July 8, 1994 through November 25, 1994. On its face, it is difficult to award plaintiffs interest for money that the government ultimately determined the plaintiffs were not entitled to receive and the plaintiffs have not offered any legal support to the contrary. According to the plaintiffs, the government allowed other beneficiaries who had received overpayments to keep any interest they earned on that overpaid amount prior to the time they repaid the money. *See* 7 U.S.C. § 1445j(a)(2)(H)-(J) (1994) (setting forth procedures for returning unearned advance deficiency payments). Although the government may have inappropriately overpaid some benefit recipients, they properly deducted the relevant amount from the plaintiffs. Thus, the plaintiffs are not entitled to interest on this amount.

Plaintiffs request attorneys fees pursuant to 5 U.S.C. § 504 (1994 and Supp. III 1997). This argument is misplaced. This statute pertains to actions brought before an adjudicative branch of an agency in objection to an administrative action under the Administrative Procedure Act. As this is an action for enforcement of a settlement agreement in the United States Court of Federal Claims, the statute is inapplicable.

Although not raised by the plaintiffs, but raised and addressed summarily by the defendant, 28 U.S.C. § 2412 (1994 and Supp. III 1997), allows for an award of fees in addition to costs against the government, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Equal Access to Justice Act (EAJA), section 2412(d)(1)(A), states:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The "position of the United States" is defined in EAJA section 2412(d)(2)(D) to mean:

[I]n addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings.

28 U.S.C. § 2412(d)(2)(D).

The United States Supreme Court noted in *Commissioner Immigration & Naturalization Service v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990), that "[a]ny given civil action can have numerous phases. While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Id.* at 161–62, 110 S.Ct. 2316; *see also Gavette v. Office of Personnel Management,* 808 F.2d at 1467 (position of the United States includes that taken by the agency at the administrative level); *accord Doty v. United States,* 71 F.3d 384, 385–86 (Fed.Cir.1995); *Chiu v. United States,* 948 F.2d at 715 ("[W]hen assessing whether to award attorney's fees incurred by a party who has successfully challenged a governmental action in a particular court, the entirety of the conduct of government is to be viewed, including the action or inaction by the agency prior to litigation."); *KMS Fusion, Inc. v. United States,* 39 Fed. Cl. 593, 597 (1997).

Thus, eligibility for an award of attorney's fees and expenses in a civil action requires (1) that the claimant be a prevailing party; (2) that the government's position viewed over the entire course of the dispute was not substantially justified; (3) that no special circumstances make an award unjust; and (4) pursuant to section 2412(d)(1)(B), that any fee application be submitted to the court within thirty days of final judgment in the action and be supported by an itemized statement. *See Commissioner Immigration & Naturalization Serv. v. Jean,* 496 U.S. at 158, 110 S.Ct. 2316; 28 U.S.C. § 2412(d)(1)(A).

For the first EAJA requirement, a plaintiff is a prevailing party if entitlement to some relief on the merits of one or more claims is established. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 & n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (noting that the standard is generally applicable in cases for which Congress authorizes an award of fees to a "prevailing party"); *Brewer v. American Battle Monuments Comm'n,* 814 F.2d 1564, 1567–69 (Fed.Cir.1987). In a case such as the one at bar, a court can determine if an applicant has "substantially" prevailed in its position by looking at the substance of the litigation. *See Schultz v. United States,* 918 F.2d 164, 166 (Fed.Cir.1990), *cert. denied,* 500 U.S. 906, 111 S.Ct. 1686, 114 L.Ed.2d 80 (1991). In this case there is no dispute that the plaintiffs are the prevailing party on the merits of their claim for $17,471.00 and on one of their three grounds for interest.

Regarding the second requirement, when a party has prevailed in litigation and filed an EAJA claim against the government, the government bears the burden of establishing that its position was substantially justified. *Doty v. United States,* 71 F.3d at 385 (citing *Gavette v. Office of Personnel Management,* 808 F.2d at 1465–66); *PCI/ RCI v. United States,* 37 Fed.Cl. 785, 788 (1997). The United States Supreme Court has held that "substantially justified" does not mean " 'justified to a high degree,' but rather 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct.

2541, 101 L.Ed.2d 490 (1988). It is no different from the "reasonable basis in both law and fact" formulation used by the majority of Courts of Appeals. *Id.* It does, however, mean more than merely undeserving of sanctions for frivolousness. *Id.* at 566, 108 S.Ct. 2541. Thus, when determining whether the overall position of the United States was substantially justified, a court should "look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu v. United States,* 948 F.2d at 715. As noted earlier with respect to the interpretation of "position of the United States" under EAJA, the government must show that its actions were substantially justified throughout the entire dispute, not just during the litigation phase. *See Gavette v. Office of Personnel Management,* 808 F.2d at 1467.

Whether the government's position was substantially justified is a factual determination which must be made on a case-by-case determination. *See Community Heating & Plumbing v. Garrett,* 2 F.3d 1143, 1145 (Fed.Cir.1993). Objective indicia can be relevant, but are not necessarily conclusive. *See Pierce v. Underwood,* 487 U.S. at 568–69, 108 S.Ct. 2541. Among the criteria that have been considered are the parties' respective settlement positions. *See, e.g., FDL Techs., Inc. v. United States,* 26 Cl.Ct. 484, 486, 1992 WL 177018 (1992). However, "the unfavorable terms of a settlement agreement, without inquiry into the reasons for settlement, cannot conclusively establish the weakness of the Government's position. To hold otherwise would not only distort the truth but penalize and thereby discourage useful settlements." *Pierce v. Underwood,* 487 U.S. at 568, 108 S.Ct. 2541. Also relevant are the stage at which the merits were decided, *see id.* at 568–69, 108 S.Ct. 2541, the state of the law when the government took its position, *see Owen v. United States,* 861 F.2d 1273, 1274–75 (Fed.Cir.1988), and the factual complexity or novelty of the subject matter, *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States,* 837 F.2d 465, 468 (Fed.Cir.), *cert. denied,* 488 U.S. 819, 109 S.Ct. 60, 102 L.Ed.2d 38 (1988).

In this case, the court has found that the language of the settlement agreement was clear and unambiguous on its face, and that the $17,471.00 set-off in 1993 is included in subparagraph 3(b) and not in separate subparagraph 3(c) of the settlement agreement. The interest claims, on one of which the plaintiffs also were successful, are secondary to the claim on the merits regarding the enforcement of the settlement agreement between the parties. Although some of plaintiffs' attorney's arguments were not successful, no circumstances have been brought to the attention of the court which would make an award of attorneys fees unjust. In fact, the record indicates that these plaintiffs have labored long and hard, and pursued numerous administrative avenues, to try to obtain the $17,471.00 to which this court finds they are clearly entitled. The court, therefore, awards attorneys fees to these plaintiffs pursuant to 28 U.S.C. § 2412, provided the plaintiffs meet the standards of 28 U.S.C. § 2412(d)(2)(B) and the fee request is submitted in accordance with section 2412(d)(1)(B).

## CONCLUSION

The defendant's motion for summary judgment is **DENIED**. The plaintiffs' motion for summary judgment is **GRANTED** and defendant is ordered to pay plaintiffs $17,471.00, without interest. Plaintiffs are entitled to interest calculated at the rate set by the Secretary of the Treasury on $7,983.00 from August 8, 1994 to August 25, 1994. Plaintiffs are not entitled to interest on $3,882.00 from August 8, 1994 to November 25, 1994. Plaintiffs are entitled to attorneys fees under EAJA in accordance with the terms of this opinion.

**IT IS SO ORDERED**