**FDL TECHNOLOGIES, INC. and Dale C. Nathan, Plaintiffs–Appellants,**

**v.**

**The UNITED STATES, Defendant–Appellee.**

**No. 91–5141.**

United States Court of Appeals, Federal Circuit.

Decided June 26, 1992.

Suggestion for Rehearing In Banc Declined July 24, 1992.

Dale C. Nathan, Nathan & Associates, pro se.

Robert E. Kirchman, Jr., Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted, for defendant-appellee. With him on the brief, were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Sharon Y. Eubanks, Asst. Director.

Before NEWMAN, Circuit Judge, SKELTON, Senior Circuit Judge, and ARCHER, Circuit Judge.

ARCHER, Circuit Judge.

FDL Technologies, Inc. (FDL) and its attorney Dale C. Nathan (Nathan) appeal the orders of the United States Claims Court which on July 8, 1991 dismissed their complaint and on June 11, 1991 denied their claims that the attorney fees awarded to FDL pursuant to the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504(a)(1) (1988), should have been paid directly to Nathan and that interest should have been allowed on the unpaid attorney fee award pursuant to the Prompt Payment Act, 31 U.S.C. §§ 3901–3907 (1988). We affirm.

## BACKGROUND

In its decision of May 14, 1990, the Armed Services Board of Contract Appeals (ASBCA) determined that the contracting officer for the Department of the Army improperly terminated for default a contract between FDL and the Army. As prevailing party, FDL submitted an application pursuant to the EAJA for $26,731.59 in attorney fees and costs. FDL subsequently filed a petition in bankruptcy on July 2, 1990, and is currently involved in bankruptcy proceedings.

The Army did not contest FDL's application for attorney fees. On September 28, 1990, the contracting officer issued Contract Modification P00006, which increased the contract price by $26,731.59, as full and final settlement of the EAJA claim. Because the issue of attorney fees was resolved informally, the ASBCA never issued an order awarding attorney fees. When FDL did not receive the $26,731.59, appellants filed a complaint in the Claims Court on November 15, 1990. Nathan, who had been FDL's attorney in the ASBCA proceeding, signed the complaint *pro se*. Appellants' complaint sought a judgment against the United States in the amount of $26,731.59, an award of interest pursuant to the Prompt Payment Act, and an order that the $26,731.59 be paid directly to Nathan.

The Army asserts that on December 14, 1990, the Defense Logistic Agency (DLA) issued a check to FDL for the full amount of the attorney fees as reflected in Contract Modification P00006 and sent it to "FDL Technologies, Mr. Albert Baddin," who was FDL's trustee in bankruptcy. After confirming that this check was not cashed, the DLA sent, and Mr. Baddin on June 19, 1991, received, the second check payable to "FLD [sic] Technologies Mr. Albert Baddin Attorney."

In its first order of June 11, 1991, the Claims Court rejected Nathan's contention that the attorney fees should have been paid directly to him because it was "not shown that the Equal Access to Justice Act contemplates payments to other than the prevailing party." In its second order issued the same day, the Claims Court denied the claim for Prompt Payment Act interest because "the Prompt Payment Act does not apply to a claim for attorneys' fees under the EAJA since the item is not within the contemplation of the subject con-

tract as a 'complete delivered item, property or service.'" Based on these two June 11, 1991 orders, as well as the issuance of the second check to FDL, the Claims Court in its July 8, 1991 order concluded that "all the matters prayed for in the complaint have now been resolved" and accordingly dismissed the complaint.

## DISCUSSION

### I.

The first issue in this case is whether an attorney is entitled to direct payment of fees awarded to a prevailing party in an agency adjudication pursuant to the EAJA, 5 U.S.C. § 504(a)(1). Section 504(a)(1) states, in pertinent part:

> An agency that conducts an adversary adjudication shall award, *to a prevailing party* other than the United States, fees and other expenses *incurred by that party* in connection with that proceeding.... [Emphasis added.]

■ By its terms, § 504(a)(1) states that the fee award is made *to a prevailing party*, not the prevailing party's attorney. Furthermore, the statute applies to fees *incurred by that party*. Thus, under the language of the statute, the prevailing party, and not its attorney, is entitled to receive the fee award. *See Thompson/Center Arms Co. v. United States*, 924 F.2d 1041, 1044–45 (Fed.Cir.1991); *VE Holding*

*Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1579–80 (Fed.Cir.1990).

The legislative history of the EAJA quoted by appellants fully supports the plain meaning of the statute. It parrots the statute by stating that the United States is "to pay attorney fees and other expenses *to a prevailing party* other than the United States in an agency adversarial adjudication." H.R.CONF.REP. No. 1434, 96th Cong., 2d Sess. 21 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4953, 5003, 5010 (emphasis added).

■ In considering a comparable fee shifting provision under the EAJA, 28 U.S.C. § 2412(d)(1)(A) (1988), this court concluded in *Phillips v. General Services Administration*, 924 F.2d 1577 (Fed.Cir.1991), that a fee award is payable to the prevailing party. The EAJA, in addition to providing for fee shifting in agency proceedings, amended 28 U.S.C. § 2412(d)(1)(A) to provide that in judicial proceedings "a court shall award *to a prevailing party* other than the United States fees and other expenses ... incurred by that party" (emphasis added). In *Phillips* we held that under § 2412(d)(1)(A), the "attorney could not directly claim or be entitled to the award." 924 F.2d at 1582. Because the fee award provision for agency and judicial proceedings contain similar language, we see no reason to depart from the holding of *Phillips*.[1]

Nathan argues that this issue is governed by our decision in *Jensen v. Depart-*

---

**1.** The dissent argues that *Phillips* supports its position that an attorney is entitled to direct payment of a fee award under the EAJA, apparently because the *Phillips* court stated that Phillips was "obligated to turn [the fee award] over to her attorney." 924 F.2d at 1582. That statement, however, was made in the context of construing the fee arrangement between Phillips and her attorney, and was completely unrelated to the EAJA.

The issue in *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), was not *who* was entitled to receive the fee award. Although the Court made the statement that "the District Court awarded respondent's counsel a fee of $3,012.19," *Id.* at 126, 100 S.Ct. at 2573, it said elsewhere: "The fact that respondent prevailed through a settlement rather than through litigation does not weaken *her* claim to fees." *Id.* at

129, 100 S.Ct. at 2575 (emphasis added). Further, it is clear that the district court held "that the *plaintiff* is entitled to an attorney's fee." *Gagne v. Maher*, 455 F.Supp. 1344, 1348 (D.Conn.1978) (emphasis added).

Cases from other courts where attorney fee awards, under various statutes, have been paid directly to counsel are unpersuasive. All involve *pro bono* counsel where the award was paid directly to counsel in order to avoid giving the prevailing parties, usually prisoners or indigents, a windfall. Here, the record does not indicate that Nathan represented FDL under anything other than an ordinary compensation arrangement; his claim against FDL for fees is that of an unsecured creditor. FDL is now in bankruptcy and there is no basis under the EAJA to elevate Nathan's unsecured claim above the claims of secured and priority creditors.

*ment of Transportation,* 858 F.2d 721 (Fed.Cir.1988). Under the facts of that case, this court held that an attorney fee award under the Civil Service Reform Act (CSRA), 5 U.S.C. § 7701(g)(1) (1982), must be paid to counsel. There the Merit Systems Protection Board (board) had held that the reasonable attorney fee it awarded had to be divided between the employee Jensen and her attorney because she had already paid her attorney a partial fee. On appeal to this court the attorney who had represented Jensen reiterated the argument he had made before the board that "he had received the right to pursue and to receive any fee awarded, and that Jensen had relinquished this right in consideration [of his] having waived part of his fee." *Id.* at 723. The factual context of that decision is clearly distinguishable. Moreover, the attorney fee provisions of the CSRA contains different language, stating that:

> the Board ... may require payment by the agency involved of reasonable attorney fees incurred by an employee ... if the employee ... is the prevailing party and the Board ... determines that payment by the agency is warranted in the interest of justice....

5 U.S.C. § 7701(g)(1). Similarly, the legislative history of the CSRA attorney fee provision does *not* require that fees be paid to the prevailing party. It states that "[s]ection 7701(j) requires an agency to pay *an employee's reasonable attorney fees*" under the standards contained in that section. S.REP. No. 969, 95th Cong., 2d Sess. 60 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2723, 2782 (emphasis added).

Given the difference in language between the CSRA and the EAJA, as well as factual circumstances of *Jensen,* we do not consider *Jensen* to be applicable in this case, much less controlling as Nathan argues. We conclude that the prevailing party, and not counsel, is entitled to attorney fees awarded under 5 U.S.C. § 504(a)(1).

## II.

The second issue is whether FDL is entitled to interest on the attorney fee award in this case, pursuant to the Prompt Payment Act, 31 U.S.C. §§ 3901–3907. Section 3902 states, in pertinent part, that:

> the head of an agency acquiring property or service from a business concern, who does not pay the concern *for each complete delivered item of property or service* by the required payment date, shall pay an interest penalty to the concern on the amount of the payment due.

31 U.S.C. § 3902(a) (emphasis added).

■ It is well established that "interest cannot be recovered unless the award of interest was affirmatively and separately contemplated by Congress," *Library of Congress v. Shaw,* 478 U.S. 310, 315, 106 S.Ct. 2957, 2962, 92 L.Ed.2d 250 (1986), and that "in the absence of specific provision by contract or statute, or 'express consent ... by Congress,' interest does not run on a claim against the United States." *United States v. Louisiana,* 446 U.S. 253, 264–265, 100 S.Ct. 1618, 1626, 64 L.Ed.2d 196 (1980) (quoting *United States v. N.Y. Rayon Importing Co.,* 329 U.S. 654, 659, 67 S.Ct. 601, 603–04, 91 L.Ed. 577 (1947)); *see also Servidone Construction Corp. v. United States,* 931 F.2d 860, 863 (Fed.Cir.1991). Thus, in interpreting the Prompt Payment Act, this court may not enlarge the waiver of sovereign immunity beyond what the language of the Act requires. *See Library of Congress,* 478 U.S. at 318, 106 S.Ct. at 2963.

■ FDL argues that it is entitled to interest on the attorney fee award because it was made by means of Contract Modification P00006, rather than through an order of the ASBCA; hence, it was reduced to a contract debt. Section 3902, however, provides for interest only on amounts due for *property* or *service* delivered to the head of an agency. In this case, the amount owed by the Army was for attorney fees incurred by FDL, not for property or service delivered to the Army by FDL. Thus, even if we view the fee award as a contract, the Claims Court correctly determined that the Army's obligation under the

contract did not arise from delivery of property or services. Section 3902 does not apply and FDL is not entitled under the Prompt Payment Act to interest on the attorney fee award.

AFFIRMED.

PAULINE NEWMAN, Circuit Judge, dissenting.

I respectfully dissent, for I can not support the improvident action of this agency of the United States, which assured in the circumstances that the attorney fee award, although paid by the government, would never reach the attorney. Such action was not required by the Equal Access to Justice Act, and defeated all of the purposes of the Act.

The Equal Access to Justice Act provides for the award of attorney fees and other expenses to the prevailing party in an agency proceeding unless the position of the agency was substantially justified or special circumstances make an award unjust. 5 U.S.C. § 504(a)(1).[1] Attorney fees are available from the government only when the prevailing party is an individual or small business whose net worth does not exceed specified limits. 5 U.S.C. § 504(b)(1)(B). The award of fees is founded on "the disparity between the resources and expertise of ... individuals and their government," quoting from the legislative history of the EAJA. H.R.Rep. No. 1418, 96th Cong., 2d Sess., 6, *reprinted in* 1980 U.S.Code Cong. & Admin.News, 4953, 4984. The purpose is not only fairness, but also to facilitate challenge of unreasonable governmental action—as was here done successfully. In Congress' words, "fee-shifting becomes an instrument for curbing excessive regulation and the unreasonable exercise of Governmental authority" *Id.* at 12, 1980 U.S.Code Cong. & Admin.News at 4953, 4991.

Fee-shifting statutes are not designed to benefit the bar. However, they have the intended and practical effect of encouraging attorneys to take on meritorious suits when the client may be in precarious financial condition. I need not stress the financial condition of FDL Technologies, for the declaration of bankruptcy speaks for itself. Thus, when the challenge to the governmental action is successful and the other criteria of the EAJA are met, § 504(a)(1) assures that the lawyer will be paid. In the case before us, that statutory purpose was subverted by the agency's refusal to pay the fee award to the attorney who incurred the fees, or even to the client who was the prevailing party.

*Discussion*

The merits of FDL Technologies' claim were decided in FDL's favor by the Armed Forces Board of Contract Appeals on May 14, 1990. FDL was represented by counsel, but FDL had paid neither attorney fees nor expenses incurred by counsel on FDL's behalf. The record before us does not show the arrangement between FDL and its counsel.

On June 9, 1990 FDL filed a request for attorney fees and expenses in the amount of $26,731.59. The fee request was duly granted by the contracting officer. On July 2, 1990 FDL Technologies filed a petition in bankruptcy. On September 28, 1990 the contracting officer issued a contract modification in the amount of $26,731.59, for the attorney fees and expenses. Despite apparently frequent requests to the agency for payment, none was made.

On November 15, 1990 FDL Technologies and its attorney filed suit in the Claims Court, requesting that payment be made directly to the attorney. The agency answer, filed in the Claims Court on February 12, 1991, stated that payment had been

---

**1. § 504(a)(1).** An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in conjunction with that proceeding, unless the adjudi-
cative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust....

made to the trustee in bankruptcy, Mr. Albert Baddin, on about December 14, 1990. The trustee in bankruptcy did not receive that payment.

A replacement check was promised by the agency. FDL and its attorney continued to request payment directly to the attorney. On May 7, 1991 the Claims Court issued an Order scheduling argument. On June 19, 1991 the trustee in bankruptcy received a check, to the order of "FLD [sic] Technologies Mr. Albert Baddin Attorney" at Mr. Baddin's address, in the amount of $26,731.59. The Claims Court then dismissed the suit, rejecting the request for payment to the attorney on the basis that the Equal Access to Justice Act does not "contemplate[ ] payments to other than the prevailing party".

The trustee in bankruptcy did not pay the attorney fee award to the attorney. The attorney fee award was instead placed in the bankruptcy estate, and the Minnesota Bankruptcy Court subsequently denied payment of the attorney fees, on the basis that the obligation was not secured.

The only issue is whether the Claims Court correctly held that 5 U.S.C. § 504(a)(1) required, as a matter of law, that the attorney fee award could not be paid to the attorney and was correctly paid to the trustee in bankruptcy. There is no issue raised, or reliance by either side, upon the bankruptcy law. Whether that law might affect the result is not before us. The sole question is one of interpretation of the Equal Access to Justice Act, and whether that Act mandates the Claims Court's result.

The government's position is that the terms of the EAJA require payment of attorney fees only to the "prevailing party", and thus bar payment to the attorney. Thus the government argues that it correctly refused the contractor's and the attorney's request that the attorney fees be paid to the attorney, and instead correctly paid the attorney fees to the trustee in bankruptcy. The government does not,

and can not, assert that the trustee in bankruptcy was the prevailing party in the litigation for which the attorney fees were awarded. Thus the fees were paid neither to the prevailing party nor to the party that incurred the fees; the statutory requirements were met neither literally nor in their intent.

I can not agree with the government's action. Authority is on the side of avoiding diversion of attorney fees, when they are awarded, to recipients who had not incurred the fees. The regional circuits, as well as the Federal Circuit, have applied the EAJA and other fee-shifting statutes in ways designed to assure that the fee payment reaches the attorney, in order to avoid a "windfall", as the opinions describe it, to persons who did not actually incur the fees. Such cases have arisen in circumstances where payment directly to the prevailing party could divert the payment from the attorney. Indeed, this case breaks new ground in paying the fees neither to the prevailing party nor the attorney, but to a different entity that did not incur the fees.

No court has required a mode of payment that assured the elimination of payment of awarded attorney fees to the attorney. The government's insistence on diverting the payment of the full amount of fees and expenses to the trustee in bankruptcy was a "windfall" to FDL's creditors, for neither FDL nor the trustee had expended this sum on behalf of FDL, and neither had an entitlement to it. As a direct result, the attorney who incurred the expenditures is in the same position as if the fee award had never been made and had never been paid.

Precedent shows that the courts have followed a common sense policy of protecting the statutory purposes of the fee award. The courts have not always ordered the fees paid directly to the attorney, but they have done so when the circumstances showed that to do otherwise would or could defeat payment to the attorney. Although there has been cited no case in-

volving a bankrupt prevailing party, and we have found none, as I observed *ante* the government does not rely on the bankruptcy laws. The government relies entirely on a purported literal reading of the Equal Access to Justice Act.

However, the EAJA, read literally, does not authorize payment to a trustee in bankruptcy who was not a prevailing party to the litigation. The attorney fee award in this case is unrelated to any legal action involving the trustee in bankruptcy. Indeed, when a contractor is threatened by bankruptcy there is additional reason to apply the EAJA in accordance with its legislative purpose. Based on the panel majority's decision, a shaky contractor will be hard pressed indeed to obtain counsel, no matter how meritorious the claim, for this court now holds that attorney fees, even when awarded by the government, will never reach the attorney of a bankrupt contractor.

There is extensive jurisprudence on fee-shifting statutes. The courts have generally held that attorney fee awards must implement the statutory purpose that the attorney fees shall reach the attorney, and not provide a windfall to others who did not incur the fees. Such rulings have not turned on the niceties of wording selected by the drafters of the various statutes. Thus in *Jensen v. Department of Transportation*, 858 F.2d 721 (Fed.Cir.1988) this court held that attorney fees awarded under the Civil Service Reform Act, 5 U.S.C. § 7701(g)(1), must be paid directly to the attorney. The enabling statute does not so require:

> **7701(g)(1).** ... the Board ... may require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment if the employee or applicant for employment is the prevailing party....

This practice of paying the attorney directly was initiated by the Merit Systems Protection Board in order to assure that the statutory purpose was met, that is, to assure that the attorney received the fees.

Although the panel majority states that the difference in wording between § 7701(g)(1) and § 504(a)(1) supports its holding that under § 504(a)(1) payment can not be made directly to the attorney, other courts have not so interpreted the EAJA. Other courts have applied the same reasoning to the EAJA as was applied by the Federal Circuit to § 7701(g)(1), in order to assure that the attorney received the fees. The Federal Circuit does not stand alone in *Jensen*, as the government implies.

In *Cornella v. Schweiker*, 728 F.2d 978 (8th Cir.1984), the court awarded attorney fees under the EAJA despite the fact that the applicant, having been represented *pro bono*, had actually incurred no fee obligation. The fee award was paid to the attorney, not to the "prevailing party." The court referred to the purpose of the EAJA "to diminish the deterrent effect of the expense involved in seeking review of, or defending against, unreasonable government action." *Id.* at 981.

In *Miller v. Amusement Enterprises, Inc.*, 426 F.2d 534, 539 (5th Cir.1970), the court construed the fee-shifting provision of the Civil Rights Act, 42 U.S.C. § 2000a–3, wherein "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee", as requiring that the fee be paid directly to the attorney. The Fifth Circuit stated that the courts have a duty to assure that the fee award does not enrich the litigants, but that the attorney fees paid by the government actually compensate the legal services performed.

The Seventh Circuit in *Hairston v. R. & R. Apartments*, 510 F.2d 1090 (7th Cir. 1975), held that attorney fees awarded under the Fair Housing Act, section 42 U.S.C. § 3612(c) of which provided that fees may be awarded "in the case of a prevailing plaintiff", shall to avoid any "windfall" be paid directly to the legal services organization which "stands in the same position as a private attorney to whom a fee is owed." *Id.* at 1093.

The Ninth Circuit in *Brandenburger v. Thompson*, 494 F.2d 885, 889 (9th Cir.1974)

held that attorney fees awarded in a 42 U.S.C. § 1983 action on equitable grounds shall "of course" be paid directly to the legal services organization, to avoid "a windfall to the litigant". In *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), an attorney fee award under 42 U.S.C. § 1988 was made directly to counsel, on the following text:

> **42 U.S.C. § 1988.** In any action or proceeding to enforce [§ 1983] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee....

*Id.* at 126, 100 S.Ct. at 2573. The Third Circuit in *Rodriguez v. Taylor*, 569 F.2d 1231 (3rd Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978), awarded attorney fees in accordance with the Fair Labor Standards Act, on this statutory language:

> **29 U.S.C. § 216(b).** ... The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, ....

The court explained its ruling that the fees should be paid directly to the attorneys:

> Of course, since the object of fee awards is not to provide a windfall to individual plaintiffs, fee awards must accrue to counsel.

*Id.* at 1245.

In *Grand Boulevard Improvement Ass'n v. City of Chicago*, 553 F.Supp. 1154, 1169 (N.D.Ill.1982), an EAJA fee award was ordered to be paid directly to the Legal Assistance Foundation. In *Wedra v. Thomas*, 623 F.Supp. 272, 278 (S.D.N.Y. 1985), the court stated that it would be "foolish, if not imprudent" to pay an EAJA award of attorney fees to the inmates who were the prevailing parties.

Review of the variety of statutory texts and their judicial application shows that the courts have not drawn distinctions based on the wording of the various fee-shifting statutes. No nuances of public policy or congressional intent appear to be reflected in the assortment of fee-shifting words in various statutes, insofar as the point here at issue is concerned, and no basis arises in precedent to distinguish among them. Instead, the courts have acted reasonably, and justly, to place the awarded attorney fees in the hands of the attorney who incurred the expenditure, when the circumstances warranted such action.

The government also raises a question of the standing of FDL's attorney to seek attorney fees. No such issue is before us, and indeed has not been previously raised. Further, there is no merit to the point. In *Lipscomb v. Wise*, 643 F.2d 319, 320–21 (5th Cir.1981), the court held that an attorney has standing to appeal in his own name the denial of attorney fees under 42 U.S.C. § 1973*l*(e), the Voting Rights Act, which provides that the court "may allow the prevailing party ... a reasonable attorney's fee". The Federal Circuit has entertained a request for EAJA attorney fees by the attorney in his own name. *Beck v. Secretary of HHS*, 924 F.2d 1029, 1037–38 (Fed.Cir.1991). *See also Devine v. National Treasury Employees Union*, 805 F.2d 384 (Fed.Cir.1986), *cert. denied*, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987) (considering application for EAJA attorney fees by union that had represented employee). Although the circuits are not unanimous on this aspect, *see, e.g., Oguachuba v. Immigration and Naturalization Serv.*, 706 F.2d 93, 98 (2nd Cir.1983) (counsel alone has no standing to request fees in connection with petition for writ of habeas corpus), there is no issue in this case of standing to seek attorney fees, for attorney fees were already awarded, and the award is not disputed. Although the government relies heavily on *Oguachuba*, it is out of point for the additional reason that FDL Technologies was party to the fee petition and the suit.

The government also relies on *Panola Land Buying Ass'n v. Clark*, 844 F.2d 1506 (11th Cir.1988), which held that when the client agreed by settlement to waive attorney fees under the EAJA, the attor-

ney had no right to make an independent claim for fees. Again, that issue is not here present, for no one has waived anything. In the case at bar the attorney fees were awarded and paid—but to neither the attorney who incurred the fees, nor the client who was literally the prevailing party.

The payment process insisted upon by the government contravenes the authority whose purpose is to assure that the attorney who has incurred the expenditures receives the sums awarded for legal services rendered. *Phillips v. General Services Admin.*, 924 F.2d 1577 (Fed.Cir.1991), cited by the majority, is not to the contrary. In *Phillips* the appellant and her attorney had entered into a contingent fee arrangement. This court awarded EAJA attorney fees to the appellant as the "prevailing party", explaining that the appellant was "obligated to turn it over to her attorney." *Id.* at 1582. The court in *Phillips* did not stray from "the policy of the statute [to pay] fees for legal services actually rendered", *id.* at 1583, and indeed there was no issue in *Phillips* as to whether the attorney would receive the fees for services rendered. The other cases cited by the panel majority, *Thompson/Center Arms Co. v. United States*, 924 F.2d 1041, 1044–45 (Fed.Cir. 1991) and *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1579–80 (Fed.Cir.1990), do not relate to attorney fees.

I can not agree that the words "to a prevailing party" distinguish the EAJA from other fee-shifting statutes and require a different application by the courts. The "plain meaning" rule does not support such a result. There is no controlling distinction among, for example, the words "may allow the prevailing party, other than the United States, a reasonable attorney's fee" in 42 U.S.C. § 1988 and 42 U.S.C. § 1973*l*(e); or "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee" in 29 U.S.C.

§ 216(b); or "payment by the agency involved of reasonable attorney fees [if the employee] is the prevailing party" in 5 U.S.C. § 7701(g)(1). The various legislative histories do not support the delicate distinction that is here drawn. All of these fee-shifting statutes have the same purpose and operate according to the same mechanism: the payment of fees for legal services rendered. Indeed, the legislative history of the EAJA cautions against an "overly technical construction" of its terms. *Brewer v. American Battle Monuments Comm.*, 814 F.2d 1564, 1566–67 (Fed.Cir. 1987), citing H.R.Rep. No. 120, 99th Cong., 1st Sess., 18 n. 26, *reprinted in*, 1985 U.S.Code Cong. & Admin.News, 132, 146 n. 26.

It was error for the Claims Court to hold that the EAJA barred paying the attorney fees to the attorney. The attorney fee award was not in reimbursement of any fees or expenses actually paid by either FDL Technologies or the trustee in bankruptcy, and thus was a windfall to those who received the money through the trustee. A simple principle, that of assuring payment to the person owed, underlies the judicial rulings that pay the award to the attorney when that is the person who incurred the fees and expenses. The reading that my colleagues on this panel have given to the EAJA rejects this principle, and ratifies action that thwarted the purposes of the EAJA. Thus I must dissent from their decision.