(Slip Opinion) OCTOBER TERM, 2009 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ASTRUE, COMMISSIONER OF SOCIAL SECURITY *v.* RATLIFF

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 08–1322.   Argued February 22, 2010—Decided June 14, 2010

Respondent Ratliff was Ruby Kills Ree's attorney in Ree's successful suit against the United States Social Security Administration for Social Security benefits.  The District Court granted Ree's unopposed motion for attorney's fees under the Equal Access to Justice Act (EAJA), which provides, *inter alia,* that "a court shall award to a prevailing party . . . fees and other expenses . . . in any civil action . . . brought by or against the United States."  28 U. S. C. §2412(d)(1)(A).  Before paying the fees award, the Government discovered that Ree owed the United States a debt that predated the award.  Accordingly, it sought an administrative offset against the award under 31 U. S. C. §3716, which subjects to offset all "funds payable by the United States," §3701(a)(1), to an individual who owes certain delinquent federal debts, see §3701(b), unless, *e.g.,* payment is exempted by statute or regulation.  See, *e.g.,* §3716(e)(2).  The parties to this case have not established that any such exemption applies to §2412(d) fees awards, which, as of 2005, are covered by the Treasury Department's Offset Program (TOP).  After the Government notified Ree that it would apply TOP to offset her fees award against a portion of her debt, Ratliff intervened, challenging the offset on the grounds that §2412(d) fees belong to a litigant's attorney and thus may not be used to satisfy the litigant's federal debts.  The District Court held that because §2412(d) directs that fees be awarded to the "prevailing party," not to her attorney, Ratliff lacked standing to challenge the offset.  The Eighth Circuit reversed, holding that under its precedent, EAJA attorney's fees are awarded to prevailing parties' attorneys.

*Held:* A §2412(d)(1)(A) attorney's fees award is payable to the litigant

and is therefore subject to an offset to satisfy the litigant's pre-existing debt to the Government. Pp. 3–11.

(a) Nothing in EAJA contradicts this Court's longstanding view that the term "prevailing party" in attorney's fees statutes is a "term of art" that refers to the prevailing litigant. See, *e.g.*, *Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and Human Resources*, 532 U. S. 598, 603. That the term has its usual meaning in subsection (d)(1)(A) is underscored by the fact that subsection (d)(1)(B) and other provisions clearly distinguish the party who receives the fees award (the litigant) from the attorney who performed the work that generated the fees. The Court disagrees with Ratliff's assertion that subsection (d)(1)(A)'s use of the verb "award" nonetheless renders §2412(d) fees payable directly to a prevailing party's attorney. The dictionaries show that, in the litigation context, the transitive verb "award" has the settled meaning of giving or assigning *by* judicial decree. Its plain meaning in subsection (d)(1)(A) is thus that the court shall "give or assign by . . . judicial determination" to the "prevailing party" (here, Ree) attorney's fees in the amount sought and substantiated under, *inter alia*, subsection (d)(1)(B). That the prevailing party's attorney may have a beneficial interest or a contractual right in the fees does not alter this conclusion. Pp. 3–6.

(b) The Court rejects Ratliff's argument that other EAJA provisions, combined with the Social Security Act (SSA) and the Government's practice of paying some EAJA fees awards directly to attorneys in Social Security cases, render §2412(d) at least ambiguous on the question presented here, and that these other provisions resolve the ambiguity in her favor. Even accepting that §2412(d) is ambiguous, the provisions and practices Ratliff identifies do not alter the Court's conclusion. Subsection (d)(1)(B) and other provisions differentiate between attorneys and prevailing parties, and treat attorneys on par with other service providers, in a manner that forecloses the conclusion that attorneys have a right to direct payment of subsection (d)(1)(A) awards. Nor is the necessity of such payments established by the SSA provisions on which Ratliff relies. That SSA fees awards are payable directly to a prevailing claimant's attorney, see 42 U. S. C. §406(b)(1)(A), undermines Ratliff's case by showing that Congress knows how to create a direct fee requirement where it desires to do so. Given the stark contrast between the language of the SSA and EAJA provisions, the Court is reluctant to interpret subsection (d)(1)(A) to contain a direct fee requirement absent clear textual evidence that such a requirement applies. Such evidence is not supplied by a 1985 EAJA amendment requiring that, "where the claimant's attorney receives fees for the same work under both [42 U. S. C.

Syllabus

§406(b) and 28 U. S. C. §2412(d)], the . . . attorney [must] refun[d] to the claimant the amount of the smaller fee." See note following §2412. Ratliff's argument that this recognition that an attorney will sometimes "receiv[e]" §2412(d) fees suggests that subsection (d)(1)(A) should be construed to incorporate the same direct payments to attorneys that the SSA expressly authorizes gives more weight to "recei[pt]" than the term can bear: The ensuing reference to the attorney's obligation to "refund" the smaller fee to the claimant demonstrates that the award belongs to the claimant in the first place. Moreover, Ratliff's reading is irreconcilable with the textual differences between the two Acts. The fact that the Government, until 2006, frequently paid EAJA fees awards directly to attorneys in SSA cases in which the prevailing party had assigned the attorney her rights in the award does not alter the Court's interpretation of the Act's fees provision. That some such cases involved a prevailing party with outstanding federal debts is unsurprising, given that it was not until 2005 that the TOP was modified to require offsets against attorney's fees awards. And as Ratliff admits, the Government has since discontinued the direct payment practice except in cases where the plaintiff does not owe a federal debt and has assigned her right to fees to the attorney. Finally, the Court's conclusion is buttressed by cases interpreting and applying 42 U. S. C. §1988, which contains language virtually identical to §2412(d)(1)(A)'s. See, *e.g.*, *Evans* v. *Jeff D.*, 475 U. S. 717, 730−732, and n. 19. Pp. 6–11.

540 F. 3d 800, reversed and remanded.

THOMAS, J., delivered the opinion for a unanimous Court. SOTOMAYOR, J., filed a concurring opinion, in which STEVENS and GINSBURG, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–1322

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, PETITIONER *v.* CATHERINE G. RATLIFF

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[June 14, 2010]

JUSTICE THOMAS delivered the opinion of the Court.

Section 204(d) of the Equal Access to Justice Act (EAJA), codified in 28 U. S. C. §2412(d), provides in pertinent part that "a court shall award to a prevailing party . . . fees and other expenses . . . in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified." We consider whether an award of "fees and other expenses" to a "prevailing party" under §2412(d) is payable to the litigant or to his attorney. We hold that a §2412(d) fees award is payable to the litigant and is therefore subject to a Government offset to satisfy a pre-existing debt that the litigant owes the United States.

I

This case arises out of proceedings in which a Social Security claimant, Ruby Willows Kills Ree, prevailed on a claim for benefits against the United States. Respondent Catherine Ratliff was Ree's attorney in those proceedings. The District Court granted Ree's unopposed motion for a §2412(d) fees award in the amount of $2,112.60. Before the United States paid the fees award, however, it discov-

ered that Ree owed the Government a debt that predated the District Court's approval of the award. Accordingly, the United States sought an administrative offset against the fees award to satisfy part of that debt.

The Government's authority to use administrative offsets is statutory. See 31 U. S. C. §§3711(a), 3716(a) (authorizing an agency whose debt collection attempts are unsuccessful to "collect the claim by administrative offset").[1] Congress has subjected to offset all "funds payable by the United States," §3701(a)(1), to an individual who owes certain delinquent federal debts, see §3701(b), unless, as relevant here, payment is exempted by statute, see §3716(e)(2). No such exemption applies to attorney's fees awards under 28 U. S. C. §2412(d)(1)(A) (hereinafter subsection (d)(1)(A)), which are otherwise subject to offset, see 31 CFR §285.5(e)(1) (2009), and which, as of January 2005, are covered by the Treasury Offset Program (TOP) operated by the Treasury Department's Financial Management Service (FMS). See Brief for Petitioner 4 (explaining TOP's extension to cover so-called "'miscellaneous'" payments that include attorney's fees payments the Treasury Department makes on behalf of federal agencies).[2]

––––––––––

[1] Section 3701 defines an administrative offset as "withholding funds payable by the United States" to the debtor. §3701(a)(1). An agency may effect such an offset by cooperating with another agency to withhold such funds, or by notifying the Treasury Department of the debt so Treasury may include it in Treasury's centralized offset program. See 31 CFR §§285.5(d)(2), 901.3(b)(1), (c). Alternatively, the Treasury Department may attempt an administrative offset after receiving notice from a creditor agency that a legally enforceable nontax debt has become more than 180 days delinquent. See 31 U. S. C. §3716(c)(6); 31 CFR §§285.5(d)(1), 901.3(b)(1).

[2] Respondent Ratliff argues for the first time in her merits brief before this Court that the 2005 amendments to the FMS regulations exempt the EAJA fees award in this case from administrative offset against Ree's outstanding federal debt. See Brief for Respondent 8, 46

In this case, the Government, relying on the TOP, notified Ree that the Government would apply her §2412(d) fees award to offset a portion of her outstanding federal debt. Ratliff intervened to challenge the offset on the grounds that §2412(d) fees belong to a litigant's attorney and thus may not be used to offset or otherwise satisfy a litigant's federal debts. The District Court held that because §2412(d) directs that fees be awarded to the prevailing party, not to her attorney, Ratliff lacked standing to challenge the Government's proposed offset. See No. CIV. 06–5070–RHB, 2007 WL 6894710, *1 (D SD, May 10, 2007).

The Court of Appeals for the Eighth Circuit reversed. 540 F. 3d 800 (2008). It held that under Circuit precedent, "EAJA attorneys' fees are awarded to prevailing parties' attorneys." *Id.,* at 802. The Court of Appeals recognized that its decision did not accord with a "literal interpretation of the EAJA," *ibid.*, and exacerbated a split among the Courts of Appeals, compare *id.*, at 801–802, with, *e.g.*, *Reeves* v. *Astrue*, 526 F. 3d 732, 733 (CA11 2008); *Manning* v. *Astrue*, 510 F. 3d 1246, 1249–1251 (CA10 2007); *FDL Technologies, Inc.* v. *United States*, 967 F. 2d 1578, 1580 (CA Fed. 1992); *Panola Land Buying Assn.* v. *Clark*, 844 F. 2d 1506, 1510–1511 (CA11 1988).[3] We granted certiorari. 557 U. S. ___ (2009).

_____

(citing 31 CFR §285.5(e)(5)). We need not decide this question because Ratliff did not raise the regulations as a bar to offset in her brief in opposition to the Government's petition for a writ of certiorari, see this Court's Rule 15.2, or in the proceedings below.

  [3] The split exists in the Social Security context because the Social Security Act (SSA), 49 Stat. 620, as amended, 42 U. S. C. §301 *et seq.,* provides for payment of attorney's fees awards directly to counsel, see §406(b)(1)(A), and until 2006 the Government in many cases treated fees awards under EAJA the same way, see Reply Brief for Petitioner 13−14.

## II

Subsection (d)(1)(A) directs that courts "shall *award to a prevailing party* . . . fees and other expenses . . . incurred by that party." (Emphasis added.) We have long held that the term "prevailing party" in fee statutes is a "term of art" that refers to the prevailing litigant. See, *e.g.*, *Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and Human Resources*, 532 U. S. 598, 603 (2001). This treatment reflects the fact that statutes that award attorney's fees to a prevailing party are exceptions to the "'American Rule'" that each *litigant* "bear [his] own attorney's fees." *Id.*, at 602 (citing *Key Tronic Corp.* v. *United States*, 511 U. S. 809, 819 (1994)). Nothing in EAJA supports a different reading. Cf. *Arthur Andersen LLP* v. *Carlisle*, 556 U. S. ___, ___, n. 4 (2009) (slip op., at 6, n. 4) (where Congress employs "identical words and phrases within the same statute," they are presumed to carry "the same meaning" (internal quotation marks omitted)). Indeed, other subsections within §2412(d) underscore that the term "prevailing party" in subsection (d)(1)(A) carries its usual and settled meaning—prevailing litigant. Those other subsections clearly distinguish the party who receives the fees award (the litigant) from the attorney who performed the work that generated the fees. See, *e.g.*, §2412(d)(1)(B) (hereinafter subsection (d)(1)(B)) (the "prevailing party" must apply for the fees award and "sho[w]" that he "is a prevailing party and is eligible to receive an award" by, among other things, submitting "an itemized statement *from any attorney . . . representing or appearing in behalf of the party*" that details the attorney's hourly rate and time spent on the case (emphasis added)); see also Part III, *infra*.

Ratliff nonetheless asserts that subsection (d)(1)(A)'s use of the verb "award" renders §2412(d) fees payable directly to a prevailing party's attorney and thus protects the fees from a Government offset against the prevailing

party's federal debts. See Brief for Respondent 11–19 (arguing that subsection (d)(1)(A)'s use of the word "'award'" "expressly incorporates a critical distinction" between the right to an "'award'" of fees and the right to "'receiv[e]'" the fees). We disagree.

The transitive verb "'award'" has a settled meaning in the litigation context: It means "[t]o give or assign *by* sentence or judicial determination." Black's Law Dictionary 125 (5th ed. 1979) (emphasis added); see also Webster's Third New International Dictionary 152 (1993) ("to give *by* judicial decree" (emphasis added)). The plain meaning of the word "award" in subsection (d)(1)(A) is thus that the court shall "give or assign by . . . judicial determination" to the "prevailing party" (here, Ratliff's client Ree) attorney's fees in the amount sought and substantiated under, *inter alia*, subsection (d)(1)(B).

Ratliff's contrary argument does not withstand scrutiny. According to Ratliff, subsection (d)(1)(B), which uses "the noun 'award'" to mean a "'decision,'" requires us to construe subsection (d)(1)(A) (which uses "award" as a verb) to mean that "[o]nly the prevailing party may receive the *award* (the decision granting fees), but only the attorney who earned the *fee* (the payment asked or given for professional services) is entitled to receive it." Brief for Respondent 16, 15 (emphasis in original; some internal quotation marks and footnote omitted). This argument ignores the settled definitions above, and even the definitions Ratliff proffers, because each makes clear that the verb "award" in subsection (d)(1)(A) means to "give *by* the decision of a law court" or to "grant . . . *by* judicial decree," not simply to "give a decision" itself. *Id.,* at 16, and n. 39 (emphasis added; internal quotation marks omitted). We thus agree with the Government that under the statutory language here, the "judicial decision is the *means* by which the court confers a right to payment upon the prevailing party; it is not itself the *thing* that the court gives (or orders the

defendant to give) to the party." Reply Brief for Petitioner 4 (emphasis in original) (citing *Hewitt* v. *Helms*, 482 U. S. 755, 761 (1987) (explaining that "[i]n all civil litigation, the judicial decree is not the end but the means")). This settled and natural construction of the operative statutory language is reflected in our cases. See, *e.g.*, *Scarborough* v. *Principi*, 541 U. S. 401, 405 (2004) ("EAJA authorizes the *payment* of fees *to* a prevailing party" (emphasis added)).

Ratliff's final textual argument—that subsection (d)(1)(A)'s reference to "attorney's fees" itself establishes that the fees are payable to the prevailing party's attorney, see Brief for Respondent 19–22—proves far too much. The fact that the statute awards to the prevailing party fees in which her attorney may have a beneficial interest or a contractual right does not establish that the statute "awards" the fees directly to the attorney. For the reasons we have explained, the statute's plain text does the opposite—it "awards" the fees to the litigant, and thus subjects them to a federal administrative offset if the litigant has outstanding federal debts.

## III

In an effort to avoid the Act's plain meaning, Ratliff argues that other provisions of EAJA, combined with the SSA and the Government's practice of paying some EAJA fees awards directly to attorneys in Social Security cases, render §2412(d) at least ambiguous on the question presented here, and that these other provisions resolve the ambiguity in her favor. Again we disagree. Even accepting §2412(d) as ambiguous on the question presented, the provisions and practices Ratliff identifies do not alter our conclusion that EAJA fees are payable to litigants and are thus subject to offset where a litigant has outstanding federal debts.

To begin with, §2412(d)(1)'s provisions differentiate

between attorneys and prevailing parties, and treat attorneys on par with other service providers, in a manner that forecloses the conclusion that attorneys have a right to direct payment of subsection (d)(1)(A) awards. As noted above, subsection (d)(1)(B) requires the prevailing party to submit a fee application showing that she is otherwise "eligible to receive an award" and, as a complement to that requirement, compels the prevailing party to submit "an itemized statement *from any attorney . . . representing or appearing in behalf of the party*" that details the attorney's hourly rate and time the attorney spent on the case. (Emphasis added.) This language would make little sense if, as Ratliff contends, §2412(d)'s "prevailing party" language effectively refers to the prevailing litigant's attorney. Subsection (d)(1)(B) similarly makes clear that the "prevailing party" (not her attorney) is the recipient of the fees award by requiring the *prevailing party* to demonstrate that *her* net worth falls within the range the statute requires for fees awards. And EAJA's cost provision further underscores the point. That provision uses language identical to that in the attorney's fees provision to allow prevailing parties to recover "the reasonable expenses of expert witnesses" and "any study, analysis, engineering report, test, or project" necessary to prepare "the party's case," §2412(d)(2)(A), yet Ratliff does not argue that it makes costs payable directly to the vendors who provide the relevant services.

Nor do the SSA provisions on which Ratliff relies establish that subsection (d)(1)(A) fees awards are payable to prevailing parties' attorneys. It is true that the SSA makes fees awards under that statute payable directly to a prevailing claimant's attorney. See 42 U. S. C. §406(b)(1)(A) (providing that where a claimant "who was represented before the court by an attorney" obtains a favorable judgment, "the court may determine and allow as part of its judgment a reasonable fee for such represen-

tation, not in excess of 25 percent of" the benefits award and may certify the full amount of the statutory fees award *"for payment to such attorney* out of, and not in addition to, the amount of" the claimant's benefits award (emphasis added)). But the SSA's express authorization of such payments undermines Ratliff's case insofar as it shows that Congress knows how to make fees awards payable directly to attorneys where it desires to do so. Given the stark contrast between the SSA's express authorization of direct payments to attorneys and the absence of such language in subsection (d)(1)(A), we are reluctant to interpret the latter provision to contain a direct fee requirement absent clear textual evidence supporting such an interpretation.

Ratliff contends that Congress' 1985 amendments to §206(b) of EAJA supply just such evidence, at least in Social Security cases. See §3(2), 99 Stat. 186, note following 28 U. S. C. §2412. The 1985 amendments address the fact that Social Security claimants may be eligible to receive fees awards under both the SSA and EAJA, and clarify the procedure that attorneys and their clients must follow to prevent the windfall of an unauthorized double recovery of fees for the same work. Section 206(b) provides that no violation of law occurs "if, where the claimant's attorney receives fees for the same work under both [42 U. S. C. §406(b) and 28 U. S. C. §2412(d)], the claimant's attorney refunds to the claimant the amount of the smaller fee." According to Ratliff, the fact that §206(b) recognizes, or at least assumes, that an attorney will sometimes "receiv[e]" fees under 28 U. S. C. §2412(d) suggests that we should construe subsection (d)(1)(A) to incorporate the same direct payments to attorneys that the SSA expressly authorizes.

This argument gives more weight to §206(b)'s reference to attorney "recei[pt]" of fees than the reference can bear. Section 206(b)'s ensuing reference to the attorney's obliga-

tion to "refun[d]" the amount of the smaller fee to the claimant, which reference suggests that the award belongs to the claimant in the first place, alone undercuts Ratliff's reading of "receives" as implying an initial statutory payment to the attorney.[4] And Ratliff's reading is in any event irreconcilable with the textual differences between EAJA and the SSA we discuss above. Thus, even accepting Ratliff's argument that subsection (d)(1)(A) is ambiguous, the statutory provisions she cites resolve any ambiguity in favor of treating subsection (d)(1)(A) awards as payable to the prevailing litigant, and thus subject to offset where the litigant has relevant federal debts.

The Government's history of paying EAJA awards directly to attorneys in certain cases does not compel a different conclusion. The Government concedes that until

––––––––––

[4] Ratliff argues that fees awarded under 42 U. S. C. §406(b) can never be "'refund[ed]'" in this sense because SSA fees are "*never* paid initially to the client." Brief for Respondent 14 (emphasis in original). That is not accurate. As we have explained, Social Security claimants and attorneys normally enter into contingent-fee agreements that are subject to judicial "review for reasonableness." *Gisbrecht* v. *Barnhart*, 535 U. S. 789, 809 (2002). Where the court allows a fee, §406(b) permits the Commissioner to collect the approved fee out of the client's benefit award and to certify the fee for "payment to such attorney out of" that award. §406(b)(1)(A). In such cases, the attorney would "refun[d]" the fee to the client in the event that the attorney also receives a (larger) EAJA award, because the attorney "receive[d]" the SSA fee from the client's funds. Similarly inaccurate is Ratliff's suggestion that our construction of EAJA §206(b)'s reference to "refun[d]" would preclude attorneys from collecting any fees from a prevailing party until both SSA and EAJA payments are awarded. Our construction does not alter or preclude what we have recognized as courts' common practice of awarding EAJA fees at the time a court remands a case to the Social Security Administration (Administration) for benefits proceedings. Such awards often allow attorneys to collect EAJA fees months before any fees are awarded under 42 U. S.C §406(b), because §406(b) fees cannot be determined until the Administration enters a final benefits ruling. See *Shalala* v. *Schaefer*, 509 U. S. 292, 295−302 (1993).

2006, it "frequently paid EAJA fees in Social Security cases directly to attorneys." Reply Brief for Petitioner 13. But this fact does not alter our interpretation of subsection (d)(1)(A)'s "prevailing party" language or the Government's rights and obligations under the statute. As the Government explains, it most often paid EAJA fees directly to attorneys in cases in which the prevailing party had assigned its rights in the fees award to the attorney (which assignment would not be necessary if the statute rendered the fees award payable to the attorney in the first instance). The fact that some such cases involved a prevailing party with outstanding federal debts is unsurprising given that it was not until 2005 that the Treasury Department modified the TOP to require offsets against "miscellaneous" payments such as attorney's fees awards. And as Ratliff admits, the Government has since continued the direct payment practice only in cases where "the plaintiff does not owe a debt to the government and assigns the right to receive the fees to the attorney." Brief for Respondent 28 (boldface deleted). The Government's decision to continue direct payments only in such cases is easily explained by the 2005 amendments to the TOP, and nothing about the Government's past payment practices altered the statutory text that governs this case or estopped the Government from conforming its payment practices to the Treasury Department's revised regulations. For all of these reasons, neither EAJA nor the SSA supports Ratliff's reading of subsection (d)(1)(A).

Our cases interpreting and applying 42 U. S. C. §1988, which contains language virtually identical to the EAJA provision we address here,[5] buttress this conclusion. Our

---

[5] Section 1988(b) provides that in actions covered by the statute and subject to exceptions not relevant here, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee."

most recent cases applying §1988(b)'s "prevailing party" language recognize the practical reality that attorneys are the beneficiaries and, almost always, the ultimate recipients of the fees that the statute awards to "prevailing part[ies]." See, *e.g.*, *Venegas* v. *Mitchell*, 495 U. S. 82, 86 (1990). But these cases emphasize the nonstatutory (contractual and other assignment-based) rights that typically confer upon the attorney the entitlement to payment of the fees award the statute confers on the prevailing litigant. As noted above, these kinds of arrangements would be unnecessary if, as Ratliff contends, statutory fees language like that in §1988(b) and EAJA provides attorneys with a statutory right to direct payment of awards. Hence our conclusion that "the party, rather than the lawyer," *id.*, at 87, is "entitle[d] to receive the fees" under §1988(b), *id.*, at 88, and that the statute "controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer," *id.*, at 90; see also *Evans* v. *Jeff D.*, 475 U. S. 717, 730−732, and n. 19 (1986) (explaining that the "language of [§1988] . . . bestow[s] on the 'prevailing party' (generally plaintiffs) a statutory eligibility for a discretionary award of attorney's fees" and does *not* "besto[w] fee awards upon attorneys" themselves (footnote omitted)). These conclusions apply with equal force to the functionally identical statutory language here.

\* \* \*

We reverse the Court of Appeals' judgment and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

————

No. 08–1322

————

## MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, PETITIONER *v.* CATHERINE G. RATLIFF

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[June 14, 2010]

JUSTICE SOTOMAYOR, with whom JUSTICE STEVENS and JUSTICE GINSBURG join, concurring.

I join the Court's opinion because I agree that the text of the Equal Access to Justice Act (EAJA) and our precedents compel the conclusion that an attorney's fee award under 28 U. S. C. §2412(d) is payable to the prevailing litigant rather than the attorney. The EAJA does not legally obligate the Government to pay a prevailing litigant's attorney, and the litigant's obligation to pay her attorney is controlled not by the EAJA but by contract and the law governing that contract. That conclusion, however, does not answer the question whether Congress intended the Government to deduct moneys from EAJA fee awards to offset a litigant's pre-existing and unrelated debt, as the Treasury Department began to do only in 2005 pursuant to its authority under the Debt Collection Improvement Act of 1996 (DCIA). In my view, it is likely both that Congress did not consider that question and that, had it done so, it would not have wanted EAJA fee awards to be subject to offset. Because such offsets undercut the effectiveness of the EAJA and cannot be justified by reference to the DCIA's text or purpose, it seems probable that Congress would have made, and perhaps will in the future make, the opposite choice if clearly presented with it.

In enacting the EAJA, Congress found "that certain

individuals, partnerships, corporations, and labor and
other organizations may be deterred from seeking review
of, or defending against, unreasonable governmental
action because of the expense involved in securing the
vindication of their rights in civil actions and in adminis-
trative proceedings." §202(a), 94 Stat. 2325, note following
5 U. S. C. §504, p. 684 (Congressional Findings).  As we
have often recognized, "the specific purpose of the EAJA is
to eliminate for the average person the financial disincen-
tive to challenge unreasonable governmental actions."
*Commissioner* v. *Jean*, 496 U. S. 154, 163 (1990); see also
*Scarborough* v. *Principi*, 541 U. S. 401, 406 (2004) (by
"expressly authoriz[ing] attorney's fee awards against the
Federal Government," Congress sought "'to eliminate the
barriers that prohibit small businesses and individuals
from securing vindication of their rights in civil actions
and administrative proceedings brought by or against the
Federal Government'" (quoting H. R. Rep. No. 96–1005, p.
9 (1979))); *Sullivan* v. *Hudson*, 490 U. S. 877, 883 (1989)
(the EAJA was designed to address the problem that
"'[f]or many citizens, the costs of securing vindication of
their rights and the inability to recover attorney fees
preclude resort to the adjudicatory process'" (quoting
S. Rep. No. 96–253, p. 5 (1979))).  EAJA fee awards, which
average only $3,000 to $4,000 per case, have proved to be
a remarkably efficient way of improving access to the
courts for the statute's intended beneficiaries, including
thousands of recipients of Social Security and veteran's
benefits each year.[1]  Brief for Respondent 4–5; see also
*Jean*, 496 U. S., at 164, nn. 12–13.

––––––––

[1] The EAJA makes fee awards available to challenge Government
action under a wide range of statutes, but, as respondent notes, the
vast majority of EAJA awards are made in these two contexts, with
Social Security cases representing the lion's share.  Brief for Respon-
dent 4–5; Brief for National Organization of Social Security Claimants'
Representatives et al. as *Amici Curiae* 22–23.

The EAJA's admirable purpose will be undercut if lawyers fear that they will never actually receive attorney's fees to which a court has determined the prevailing party is entitled. The point of an award of attorney's fees, after all, is to enable a prevailing litigant to pay her attorney. See, *e.g., Missouri* v. *Jenkins*, 491 U. S. 274, 285 (1989) ("We . . . take as our starting point the self-evident proposition that the 'reasonable attorney's fee' provided by [42 U. S. C. §1988] should compensate" for "the work product of an attorney"); *Hensley* v. *Eckerhart*, 461 U. S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee"). We have accordingly acknowledged that in litigants' motions for attorney's fees, "the real parties in interest are their attorneys." *Gisbrecht* v. *Barnhart*, 535 U. S. 789, 798, n. 6 (2002). Subjecting EAJA fee awards to administrative offset for a litigant's debts will unquestionably make it more difficult for persons of limited means to find attorneys to represent them. See, *e.g.,* Brief for National Organization of Social Security Claimants' Representatives et al. as *Amici Curiae* 25 (hereinafter NOSSCR Brief).

In its arguments before this Court, the Government resists this self-evident conclusion, but each of the three reasons it proffers is unpersuasive. First, the Government suggests that because EAJA fee awards are limited to those circumstances in which the Government's position is not "substantially justified," 28 U. S. C. §2412(d)(1)(A), no lawyer can rely on an EAJA fee award when deciding to take a case, so the possibility of an offset eliminating the award will play no additional role in the lawyer's decision.[2] Reply Brief for Petitioner 16–17. But it is common

--------

[2] In its brief, the Government downplays the frequency with which fee awards under the EAJA are made. At oral argument, respondent's counsel represented that EAJA fee awards are made in 42% of Social Security cases in which the claimant prevails and in 70% of all veteran's benefits cases filed. Tr. of Oral Arg. 42–43. The Government did

sense that increasing the risk that an attorney will not receive a fee award will inevitably decrease the willingness of attorneys to undertake representation in these kinds of cases.

Second, the Government contends that any disincentive the fear of administrative offset may create is mitigated in the Social Security context by the Social Security Act's independent provision authorizing a fee award payable directly to the attorney. See *id.,* at 17–18 (citing 42 U. S. C. §406(b)(1)(A)). But as the Government acknowledges, the "EAJA's fee-shifting provisions are potentially more generous than [the Social Security Act's] in at least three respects": (1) A court may not award attorney's fees under the Social Security Act, but may under the EAJA, when the claimant wins only a procedural victory and does not obtain any past-due benefits; (2) fees under the Social Security Act are limited to a percentage of benefits awarded, while EAJA fees are calculated under the lodestar method by examining the attorney's reasonable hours expended and her reasonable hourly rate; and (3) in contrast to the Social Security Act, fees may be awarded under the EAJA in addition to, rather than out of, the benefits awarded. Brief for Petitioner 6–7. EAJA awards thus provide an important additional incentive for attorneys to undertake Social Security cases.

Finally, the Government argues that lawyers can easily determine at the outset whether a potential client owes the Government a debt and can then assist the client in establishing a written repayment plan that would prevent an offset. Reply Brief for Petitioner 18. At oral argument, however, the Government acknowledged that it was not

_____

not contest the number for Social Security cases but suggested that the percentage of veteran's benefits cases resulting in EAJA awards is closer to 50% or 60%. *Id.,* at 52. Under either estimate, these are hardly vanishing odds of success for an attorney deciding whether to take a client's case.

aware of any instance in which this has happened in the five years since it began subjecting EAJA fee awards to administrative offset. Tr. of Oral Arg. 12–13. It is not difficult to understand why. Helping a client establish a repayment plan would be a time-consuming endeavor uncompensated by any fee-shifting provision, and a client who needs such assistance is unlikely to have the funds to pay the attorney for that service. If the Government is instead suggesting that a lawyer can simply decline to represent a prospective client once she knows of the client's debtor status, that suggestion only proves my point. Cf. NOSSCR Brief 25 (describing deterrent effect of offsets on representation).

In the end, the Government has no compelling response to the fact that today's decision will make it more difficult for the neediest litigants to find attorneys to represent them in cases against the Government. I "find it difficult to ascribe to Congress an intent to throw" an EAJA litigant "a lifeline that it knew was a foot short. . . . Given the anomalous nature of this result, and its frustration of the very purposes behind the EAJA itself, Congress cannot lightly be assumed to have intended it." *Sullivan*, 490 U. S., at 890.

The Government suggests that it is possible to glean such intent from the fact that Congress did not expressly exempt EAJA awards from administrative offset under the DCIA. Reply Brief for Petitioner 19–20; 31 U. S. C. §3716(c)(1)(C) (specifying certain federal payments that are not subject to administrative offset); see also 31 CFR §285.5(e)(2) (2009) (identifying payments that are not subject to administrative offset because of a statutory exemption). If "application of the offset program to such awards will make it more difficult for Social Security claimants or other litigants to find attorneys," the Government contends, the "provisions that govern the offset program indicate that Congress is willing to bear that

cost." Reply Brief for Petitioner 20. The history of these provisions indicates otherwise. For more than two decades after the EAJA was enacted in 1980, the Commissioner of Social Security "consistently paid" EAJA fee awards directly to the attorney, not the prevailing party. *Stephens ex rel. R. E.* v. *Astrue,* 565 F. 3d 131, 135 (CA4 2009); see also *Bryant* v. *Commissioner of Social Security,* 578 F. 3d 443, 446 (CA6 2009); cf. *ante,* at 3, n. 3, 9–10. "In fact, the Commissioner created a direct deposit system for attorneys and issued [Internal Revenue Service] 1099 forms directly to the attorneys who received awards, noting the awards as taxable attorney income." *Stephens,* 565 F. 3d, at 135. Not until 2005, when the Treasury Department extended the offset program to cover "miscellaneous" federal payments, including "fees," did the Commissioner cease paying EAJA fee awards directly to attorneys and adopt the position that the awards were appropriately considered the property of the prevailing party. *Id.,* at 136 (internal quotation marks omitted); see also *Bryant,* 578 F. 3d, at 446; *ante,* at 2, 10. Congress therefore had no reason to include a specific exemption of EAJA fee awards (in the Social Security context or otherwise) from the offset program when it enacted the DCIA in 1996.

I am further reluctant to conclude that Congress would want EAJA fee awards to be offset for a prevailing litigant's unrelated debts because it is not likely to effectuate the DCIA's purpose of "maximiz[ing] collections of delinquent debts owed to the Government by ensuring quick action to enforce recovery of debts and the use of all appropriate collection tools." §31001(b)(1), 110 Stat. 1321–358. This purpose would be better served if claimants are able to find attorneys to help them secure the benefits they are rightfully owed in the first place, thereby making available a source of funds to permit repayment of the claimants' Government debts at all. See NOSSCR Brief 32; see also 31 U. S. C. §3716(c)(3)(A) (after initial $9,000

annual exemption, Social Security benefits are subject to administrative offset).

While I join the Court's opinion and agree with its textual analysis, the foregoing persuades me that the practical effect of our decision "severely undermines the [EAJA's] estimable aim. . . . The Legislature has just cause to clarify beyond debate" whether this effect is one it actually intends. *Bartlett* v. *Strickland*, 556 U. S. 1, \_\_ (2009) (GINSBURG, J., dissenting) (slip op., at 1).